Anyway, uh, counsel. Your Honor, Dave Roth where we are today, not representing appellant Joseph Marcy. I'm the supervising attorney in this case. And with the court's permission, the argument will be presented by Adela Olari and Eric Fredrickson, two recently graduated law students who assisted me with the briefs in this matter. Fabulous. Thank you, Your Honor. We look forward to hearing from them. Do you mind if I remove my mask? I hope you do. Cause I can hear what you're saying. Thank you, Your Honor. And may it please the court, Adela Olari, counsel for petitioner Joseph Marcy. Your Honor, Mr. Marcy is in prison based solely on testimony that has been fully recanted. A recantation that the PCRA court explicitly found was credible. My co-counsel will explain why Mr. Marcy's continued incarceration violates due process. The district court refused to reach this issue, concluding that Mr. Marcy procedurally defaulted his habeas claim based on the recantation. So you're going to focus on procedural default? Correct. Great. Then let's talk. So here's what I'm trying to, um, understand, right? So, um, the superior court raises, uh, four bases for its decisions, including that Marcy's procedurally defaulted. And if I understood your brief, you'd really focus on the fourth one. Uh, focus on the additional supplement, but here's, here's where I'm caught up and maybe you can help me. I I'm caught up on whether, in fact, the, um, what the, um, superior court describes as the third petition is in fact, the third petition. And is it better described as a supplement to the second petition? Right. Um, now, um, you may see where I'm going because if it's a supplement to the second petition, then there's no question of whether recantation was, was, was, uh, was, was, was mentioned then because obviously in, if you don't do that, then you have problems with the third petition. Is it a new petition? What's in it? Do you need the additional petition? I'm sorry, the additional supplement. So help me. Am I thinking about it the right way? So if we go with what the superior court said, which is designate that don't go there, go with what the PCR A court said, right? Which of the PCR A court said, okay, here's a second. PCRA petition and I'm ordering a supplement, right? I mean, that's essentially what happened. I think that's a plausible, what you're saying is a plausible argument. Uh, Mr. Marcy did file that second petition. The only reason why the superior court called it a legal nullity is because, uh, the PCRA court sui sponte reinstated it. Uh, but that law or the superior court cited the case in particular doesn't stand for that proposition. And I think it's mixed whether the PCRA court had authority to reinstate that second petition. If it is counted as a, as a valid PCR petition, then I agree. We wouldn't have to go into the supplement or amendment issue. And I think if you look at one of our cases that we cite Mojica, um, a described something as a legal nullity, but nonetheless excuse that legal, legal nullity because it was the PCRA court that had initiated it and it wasn't the fault of the petitioner here. I think that argument would also be applicable, which would render that second, which could render the second PCRA petition as a separate petition. Um, which I think, so I think what you're saying does make sense I'm answering correctly. Yeah. I mean, one of the, um, ways of thinking about it, you mentioned it a second ago is, is it clear under Pennsylvania law that the superior court's determination that what the PCRA court did to respond to is a legal melody, as I understand it, there are cases, superior court cases, no Supreme court cases, there are superior court cases on both sides of that issue. Correct. And I, yes. And I think under the independent and adequate state ground doctrine, if there are cases on either side, then that's not a consistently applied rule, which cannot be used as an adequate procedural ground to deny this court from hearing the case. So if what you're saying, and I agree with you, that there are cases either way that go, whether this was a legal nullity, then that still is not sufficient to prevent, to, to, to establish procedural default. Well, assume it's not a legal nullity. Where do you come out on whether the, the, um, supplement, right. On whether what the superior court had called or deemed a third petition is in fact, a third petition, as they said, or is it in fact, a supplement to the second petition or doesn't it matter? I think it doesn't matter. If it's not, if it's a supplement to the second petition, then it is a supplement within the one year time bar. And we wouldn't even need to, to go under, to, to, to, to go into discussion. If it is a separate PCRE petition, that's still okay because it was within, again, the one year time bar. Um, and then it was adequately supplemented to include, um, all of the recantation claims plus that's that second, that March, 2013 supplement or PCRE petition referenced the recantation claims already presented. Uh, so I, I think under either, under either sort of like branches that we look into this, Mr. Marcy did have a valid PCRE petition that validly and fully raised the recantation. When you say already presented, you mean already presented in the second petition? Correct. So, but that obviously is, that's a disputed issue at least. So I just want to make sure I'm following what your argument is. So there's two reasons why the recantation claim was fully presented in the March, 2013 supplement. The first is that it incorporated those key, those previous two petitions. But I agree, if you think those are legal nullity, that may not be a sufficient basis to raise it, but then that supplement, that March, 2013 supplement was additionally amended by the May, 2014 supplement, which did, uh, uh, reproduce the investigative interview and summarized DM's recantation. So either by incorporation or by amendment, that petition included the recantation claim. You mentioned earlier, you talked about the independent and adequate state law grounds doctrine. How does that exactly work? How many deviations in case law are necessary? Is it simply one? Does it have to be a court of a specific level? How are we to measure all of that? I believe Campbell v. Burris, which is a third circuit case said that in order for something to be applied consistently in the majority of state Supreme court cases, obviously we don't have a majority in this case. We have one Supreme, one Supreme court case, um, saying that's not the rule that the superior court recited. We also have three other superior court cases that say that's not the rule. If it's inconsistent like this, then that is not an adequate state ground. Why is, well, it's certainly inconsistent in the dictionary sense of the word, but why is it inconsistent within the legal sense of the word, given that we have a wholesome authority from a court of say, final decision? I guess the challenge here is saying you've illustrated it perfectly. The Supreme court says something. Well, then a superior court says, well, here's a different set of facts. I mean, is that suddenly now a divergence of opinion and inconsistent? I mean, arguably it is because now you have two. Arguably it's not because the Supreme court's decision is still the one that we would be looking to. So how do, what is the rule of law that we're supposed to use out of this? Because I don't think Campbell really answers it. Sorry. And just to clarify. So the superior court decision in our case, that went against three other superior court decisions and one state Supreme court. So I think if you look at the balance, the rule goes out against the superior court saying that you don't need formal explicit leave to amend. But second, if there is something like, if you think that the breakdown is a little less even, in order for a state procedural rule to prevent a federal court from hearing a claim by a federal prisoner who is arguing that his detention is unconstitutional, I think it would need to be that the state procedural rule would need to be much more clear in order for there to be a real state interest in enforcing it. And in this case, the superior court followed a rule that is not only inconsistent, but I think it's flatly wrong. But even if it's inconsistent, that shouldn't be a strong enough basis to prevent this court from hearing, at least hearing the claim of a federal prisoner who's sentence is unconstitutional. And then second, even if we have some disagreement about the procedural default issue, there's a second independent way for us to overcome it by the miscarriage of justices. And I see that my time has allotted. I can answer more questions if there are others, or my co-counsel can switch off to discuss the due process claim. No, we want to hear. I said, no, we want to hear. I told you I was colorblind. Go ahead. Great. So for the miscarriage of justice test, in order, if there is a true procedural default, it can be excused, excuse me, if, sorry, it can be excused if Mr. Marcy shows that it is more likely than not that no reasonable jury would have convicted the petitioner in light of new evidence. In this case, we have a PCRA court finding that in light of the new recantation, that would likely compel a different outcome. I think that's a pretty strong basis of meeting the miscarriage of justice test. I mean, it's an extraordinarily high standard, though, right? And so this goes to two of the points that you've argued. First, and you repeated this again today, that Mr. Marcy was convicted solely on a piece of evidence. I'm not sure that that's correct. I mean, there was other evidence. And I assume you would argue that that was less weighty, but is it fair to say that it was not simply the one witness's testimony that was introduced? There was other evidence. Your Honor, the other evidence was mostly hearsay statements of caseworkers relying on DM's testimony and one medical examiner who, the medical examination didn't even point to Mr. Marcy, but it really doesn't matter what I think necessarily, the PCRA court who heard both the trial and DM's recantation, found the recantation to be credible and also questioned the existence of a crime at all, given this recantation. And it was the district court, sorry, it was the PCRA judge's word of conclusion that said that the recantation would likely compel a different outcome. I thought when the word solely was used, your use of it was that the PCRA court had mentioned several times that she was the sole eyewitness. Was your brief slightly different saying that was the sole testimony? I just want to be clear. Sorry. So I guess when we said... Because I mean, the judge is obviously right. I mean, it was the sole evidence, right? That there was definitely other evidence, but this was clearly the centerpiece, I guess, of the government's case, which is why we used that language. And again, after the recantation, the fact that the PCRA judge questioned, like whether a crime had been committed and explicitly ruled that this would compel a different outcome, I think is the reason why we said that really the government's case hinged on DM's testimony. Let's say, and if this is for your colleague, you'll tell me, but let's say that either on the procedural default or the miscarriage of justice, you prevail, right? We agree with you, right? What comes next? Do we then go to due process and then he jumps in to save the day? Yes, exactly. Then we decide the merits. And then there's also, again, a third basis, the cause and prejudice standard, but we were, which is a third way that we could overcome the procedural default, but not that the merits issue. What specific finding do we have to make for you to prevail on procedural default? Is it merely that the superior court's finding of the exercise of discretion by PCRA court as being a legal nullity is incorrect? That gets you to where you need to be, or is it something more than that? I think that would be sufficient, but there's another sufficient way of getting there, which is saying that the superior court's decision that you need formal leave to amend the petition was an inadequate state of state procedural ground, because that's not the rule and it's inconsistent. So that's one of two ways you could overcome the procedural default. Okay. There was something that I didn't understand about one of your responses on this legal nullity issue. Is it that there are three superior court decisions that go one way and one superior court decision and the Supreme Court of Pennsylvania that goes the other way? No. So there are three superior court decisions and one Pennsylvania Supreme Court decision that says you do not need explicit formal leave to amend by submitting a supplement to the court and the court accepting the supplement, deciding on a merits holding hearing, that constitutes an authorized amendment. And only the superior court in this case went the other way. So it's four on our side for one for the superior court. Oh, there's no, forgive me. I just want to make sure I got this. So there is a Supreme Court of Pennsylvania decision that goes against what the superior court did here. Correct. That's Dennis. So why isn't that dispositive? I think it, I think it is dispositive. And I believe that the Pennsylvania Supreme Court in Dennis said that when the Commonwealth raised that objection, quote, that objection must fail here and anywhere else that it's raised. Okay. Thank you so much. Thank you so much. Go ahead, sir. Good afternoon. May it please the court. Eric Fredrickson representing appellant Joseph Marcy. I'd like to reserve three minutes for rebuttal if that's all right. Yes, of course. Um, as explained more fully in our briefs, the continued incarceration of Mr. Marcy violates due process in several ways, but today I'd like to focus on the most straightforward way to resolve this case, which is under current versus Delaware. In current, this court held that false testimony violates due process when it's so undermines a criminal trial that it renders it fundamentally unfair. That's what happened here. The victim and soul. I witnessed the alleged crime in this case, whose word was the only evidence incriminating Marcy. And I can clarify that. Let me ask you a question about current. Is there, is, is there, is there a way to look at current that, that, um, the prosecutorial misconduct of some sort of governmental, um, misconduct has to be implicated in order to come to that conclusion or is that just, uh, to the side? I don't think that's a good reading of current, your honor, because this court in current explicitly rejected the idea that knowledge had to be, as it put it, brought home to the prosecution. Right. But it was, but it was implicit in the testimony of the law enforcement agent. Right. I mean, it was, it was part of the governmental actor. So I agree. We made clear, we cannot import this over to the prosecutors, but it was already within the governmental building, if you will, where the, where the impropriety that led to the false evidence, uh, occurred. So how do we deal with that? Um, I don't think the place where the impropriety occurred is a distinction here, your honor, because the false testimony in this case was at the trial. I mean, I take it the witness in current, uh, was a detective, but that was not something that this court relied on in current. Again, uh, the court didn't concern itself with knowledge. It thought that irrelevant. And instead what it focused on was the effect that the false testimony had on the trial. Um, it asked how central was this testimony? What kind of influence did it exert on the trial as a whole? So I think the quote that you want is on seven 13 is I think that's what you had in your brief. Is that the, we conclude language. I think so. I don't have that in front of me, but I believe that's, I do. Uh, 10, tell me if I'm, if I have it wrong, you'll tell me. Um, we conclude as did the court below that the knowingly false testimony of detective Rodenheiser under the circumstances of the case at bar was sufficient to cause the defendant's trial to pass the line of tolerable imperfection and fall into the field of fundamental unfairness. That's the quote. That's right. So let's just, um, get back to the judge. Maybe he's question. So would that statement of, uh, our law is, is there some, uh, intuition or, or inference that, um, government, um, malfeasance, if you will, is implicated or part of the determination? No, your honor. I don't think there's any suggestion in that sentence. And that's certainly not how the second circuit interpreted current standards versus Sullivan. The second circuit's whole case law is actually built on current adopting current, and it understands current in the way that we do. Um, it's also how, uh, according to the Western district of Pennsylvania, as recently as 2019 understood current that's Gadesky versus Gillis granting habeas relief on this basis. Um, so I think our reading is the more straightforward, uh, reading of current and it's the, it's the reading that is still good law and still applied, um, here in district courts in the circuit and as well in the second and ninth circuits. Um, again, the, the focus on recurrent is on the effect of the false testimony on the trial and essentially asking, did this false testimony so infect the whole process, so undermine any truth seeking function that the trial was fundamentally unfair. So, so in, in your view, it doesn't take any kind of stretch or, um, assuming we get past procedural default, right? Um, it doesn't take any kind of stretch to get to the due process, um, issue, right? So that we go right to the review of the PCRA, um, courts determination. I think if I'm understanding you correctly, what I, what I see is that the PCRA court's factual determination resolves any potential procedural default through the miscarriage of justice exception. And then on the merits leads very clearly to relief under current, um, because the PCRA court found, uh, DM's recantation credible, um, that factual determination must be presumed correct by this court under ADPA. And then in any case, it's a, it's a credibility determination by the state court trial judge that actually saw this witness testify. Um, and if we look at the trial, uh, DM's testimony was absolutely central. There, there was no other evidence that actually pointed to Marcy aside from the word of DM. There were hearsay witnesses who said, DM said this, then there was DM's testimony. Then there was a medical expert who's, who testified that he could not determine who, if anyone perpetrated any abuse. So. I thought just, just not to interrupt you counsel, but if we could go back to, to Curran for a second, because I do think you're right. I mean, this is, this is where your argument rests. So two questions. First, as I read Curran, it was a fairly well-documented cover-up of, of false evidence and knowing perjury, right? That's not mere recantation of evidence. It's not newly discovered evidence as it will. It is the discovery of a fairly fulsome amount of misconduct by law enforcement, which we labor to say did not attach itself to the prosecutorial team. But again, going back to my earlier point, it was within the government's wheelhouse. So factually, I, I'm still struggling to see how that wouldn't require a re-imagination or a reinterpretation of Curran's facts, but as a legal matter too, wasn't that important to finding a due process violation at all? Because you're, you're going to need some state action hook here under the 14th amendment. So it makes sense in Curran that it was there because the government was involved in this misconduct, but here we don't have the allegation. So take either one, however you want. I see my time has expired, but if I could continue. Yeah, sure. So I think, you know, there's several parts to that. I'll start with the state action question. I don't think there's any state action issue here. The due process violation is convicting Marcy, prosecuting and convicting Marcy in a trial that was fundamentally unfair. So that's the state action. The only difference is state knowledge. And then I don't think the state knowledge issue is a problem again, because Curran didn't rely on it. That's not how Curran analyzes this claim. It's also not how Curran has been interpreted again, by the second circuit, not just in Sanders, but in a number of cases where it's regularly granted relief and also by district courts who understand Curran this way in the circuit. So I don't think it's a re-imagination of Curran. And there was a well-documented misconduct there. Here, there's a state court determination finding credible, not just recantation, but recantation in which the witness says, all that earlier testimony, I lied. That was a lie. So we do have essentially the same situation. But I understand that you want to say the same situation is you have evidence in both matters that is supporting the conviction. That evidence has now been called into question by falsity. One is knowing misconduct by government. The other is the, is at least the partial, perhaps total recantation of a witness. I mean, that has to be a separate set of facts. And I understand that you're saying we should follow Curran, but I don't, I don't think we could say it's one for one. There are factual differences. I don't think any of those factual differences are material to the legal analysis that, that comes from Curran.  So if it doesn't support your argument, then, then what does? Then, you know, I think the standard would be under something like Lambert versus Blackwell, whether the prosecution knew or should have known. And, you know, I think we suggested a possible remand on that. I think the record is not as clear as it could be on that, but in any case, you know, we're, we're certainly not relying on state knowledge. But there's no good, fake basis for you to really make that argument, is there? I, not, not actual knowledge. I think the claim would come out of constructive knowledge that there was some basis that, to question or, or to investigate. Again, I, I recognize, as you say, that, that there's not really a strong basis in the record for that. And that's why I think the clearer path to relief here is through Curran, where again, prosecutorial knowledge in these narrow circumstances, where you have clearly false testimony that is really at the core of the trial, is the centerpiece of the trial, without which I don't think Marcy could have been convicted at all. Again, because only DM's word pointed to him. But when we review the PCRA decision, number one, what's the standard of review? And number two, what, what are we reviewing? Are we only, excuse me, as we, as we think about the PCRA court's decision, are we only thinking about whether indeed DM was the sole eyewitness in that, that testimony, changing in a fundamental way, tips the entire balance? Is that the only issue we're looking at? So, standard of review and then exactly what we're looking at. So, so the standard of review is that this is a factual determination, a credibility determination, which in any case would get clear error review. But this is also a state court factual determination under ADPA. So under 2254E1, this court must presume that that factual determination is correct. And then the burden is on opposing counsel to, to show by clear and not done. So that's the standard of review. And I'll, I'll just note that this is a credibility determination, again, by the judge who oversaw the initial trial. And- Yeah, but the, isn't it two things, right? Yes, I, yes. Yeah, okay. Yes, so that's the credibility determination that, again, is, I think, so strongly supported by the judge's firsthand observation. And then there's another factual finding that about the remaining evidence not incriminating Marcy and, and essentially, as that judge put it, would compel a jury to acquit in light of the new evidence. That's a legal question. That's, well, I think there's an implicit factual finding in there that the remaining evidence did not did not incriminate- That's a legal determination. I, I think- The judge, the judge saying that when you look at the rest of it, she's the sole eyewitness. And when you look at the rest of it, right, you get a different result. The different result determination is a legal determination. I agree. I think there's an, an implicit factual determination about the, any other evidence in the case. But, but even taking your point, Your Honor, I don't think you need to rely on, on that conclusion. Because once you accept the credibility determination, I think the legal conclusion is so clear on this record. Again, DM's word was the only evidence that pointed to Marcy. It was the only thing that actually incriminated him. And so the full recantation found credible. I'm sorry. Well, and you're saying that because the doctor's the doctor's direct DM, and the DM retracts, not retracts, recants, then- Right, there's nothing- The doctor's testimony- There's nothing to corroborate. Is inherently incriminatory. Yes, Your Honor, and, and the doctor also couldn't even conclusively establish that abuse had, had taken place. But, but I think more importantly, the doctor didn't so much as mention Mr. Marcy in all of his, his testimony. So the recantation really does eliminate the only evidence that pointed to Marcy. The entire trial really hinged on whether to believe her statements that she then fully recanted. So, you know, if ever there is testimony that is crucial to a trial, I think it's DM's in, in this one. And, and under Curran, when you have false testimony, not just any false testimony, but false testimony that's this important to the trial, that has this much influence on the trial. That's where the trial becomes fundamentally unfair, because the, the very process has been kind of corrupted by this falsehood at the heart of it. And, and so, you know, under Curran, I think the PCRA court's factual findings really lead directly to relief, just as they would allow Marcy to overcome any procedural defaults were there, if there were one. But, but I know my time has expired on that. Suppose you had a, a, a habeas case where subsequent to the trial, one of the witnesses recants their testimony. Is that always going to be sufficient under your reading of Curran? No. First of all, there's a very high materiality threshold. So the petitioner would have to show that, that, I mean, first of all, that the recantation would have to be found credible. And most recantations, you know, they're going to be looked at very skeptically. You're not going to have the, the state court factual finding that we have here. But, but even then, you know, clearing that hurdle, you're going to have to show that that false testimony was so important to the trial that it really influenced the trial as a whole, and the falsity, the falsification undercut the whole process. That's, that's not going to be the case in, in every case. I think that's why this claim is not available to a lot of petitioners who will, will try to argue that the prosecution knew or, or should have known. And that's a more common claim. But what Curran says is that in some circumstances, in, in narrow circumstances, relief is warranted regardless of state knowledge because of the effect of the testimony on the trial. And that's, I think, what this court said in Curran. That's how, again, district courts like the Western District of Pennsylvania in, in Godesky understood it. And that's how the Second Circuit has understood this doctrine and continued to apply it. We cite, you know, a number of cases from the Second and Ninth Circuit in very similar circumstances, where you have one key eyewitness that the prosecution's whole case rests on. It then becomes very clear that that witness committed perjury. And, and that undercut the basis for the conviction and undercut the whole trial and, and they've, they've granted relief in these circumstances. And I think that is the cleanest way, the sort of most straightforward way to, to cut through this case. I'm, I'm I just want to follow up on Judge Mady's question, yeah? So I, I, I, I share a concern, right? Cuz every time we write something, it's like, what, what's this gonna mean? So in these types of cases, not, not assertions by a child, but let's say adults sort of take that out of it, but it's sexual assault, right? So, testimony's given, conviction is obtained, and then there's a recantation. Now, I suppose your response is, well, we're, we're, we're not worried about that long term because judges make these kinds of decisions, and this is not standing for the principle that recantation is that a reviewing court's determination with regard to the recantation is gonna be similar to the one here on a regular basis, cuz there's a lot more to it. In those kind of cases, corroboration, etc. But, is it standing for, will, will, will this case stand for the principle that in these kinds of recantation cases, it can lead to this kind of relief? I think the ruling that we're asking for from this court would stand for the proposition that in rare circumstances, in narrow circumstances, false testimony can be so crucial to a trial that, and so clearly false, that it violates due process because it completely undermines the trial. And I think what you were saying earlier is exactly right, that, you know, trial courts do make credibility determinations, and they will be able to do that, and, and they have been doing that. Again, you know, we cited to Gadesky, so district courts have been hearing current claims and, and ruling on them. They've also been, you know, the Second Circuit has been handling claims under this doctrine. So, so I don't think it's, it's sort of throwing the doors open. I think it's a very caverned doctrine based, again, on clearly false testimony, and on a very demanding standard of materiality that is easily met here, because of the facts of this case, but will be very demanding, I think, in, in other cases. In, in your view, our court hasn't really done much with current, but, current. But the Second Circuit in a couple of cases, would, would the, would the standard enunciated in Ortega, would that be what you would be thinking is the appropriate standard we should apply here? Is it material, and conviction would most likely not have occurred. Is that the standard you believe we should apply? I think in the first place, this, this court could simply apply current, which takes a kind of case by case approach. Looking at all the, the circumstances of the trial. I do think if, if this court wants a sort of clearer more articulated standard, then that is probably the most reasonable way to go. Again, that if is most, the petitioner most likely would not have been convicted, but for the false testimony. I think that essentially does answer the question posed by Curran, which is, was the false testimony so important, so crucial to this trial? So, so I think this court could simply affirm Curran and, and, and apply Curran and proceed that way. If it wants to clarify, I think the Second Circuit's approach would be a reasonable way to do so. Thank you. Okay, very good, thank you. Just to be clear, only you'll be participating on- That's the plan, it's all three minutes. Okay, very good. Good afternoon, your honors. May it please the court, Jim McMonigle, Assistant District Attorney, Luzerne County, for the appellees. Good afternoon. Good afternoon. Your honors, the appellees, the commonwealth's view of this is that the district court was exactly right. The defendant has procedurally defaulted his claims in this case, and he's unable to show any cause or prejudice to overcome that procedural default. The key question here, underlying the default, is jurisdiction, which in the appellant's briefing and in the reply brief said the commonwealth never raised. Well, as the court is well aware, I'm sure jurisdiction can never be waived, and any court can sui sponte, raise its own jurisdiction, if there is a question of that jurisdiction. So we go back to the very beginning as the court was questioning my colleagues, that what's the effect of the first two PCRAs that were filed, that clearly under Pennsylvania law were inappropriate because a direct appeal was pending already in the superior court. So the trial court, the PCRA court at that point, properly denied those first two PCRAs, denied and dismissed them. So there's nothing existing at that point, because those two petitions had been denied and dismissed. So your position is that the PCRA court's allowance, if you will, of the supplement to the second petition was essentially ultra-virus, or that it is appropriately described by the superior court as a third petition. It was appropriately described as a third petition, and even if you want to get more technical from the commonwealth's point of view, since those first two were denied and dismissed and were legal nullities, the third one that was filed should have been arguably considered his first timely PCRA petition. So although the superior court called it the third petition, it was really the first one that had any legal effect. Well, if it's the first timely petition, as you say, then why isn't the additional supplement, which mentions the recantation, why doesn't that solve the problem? It doesn't solve it because of Rule 905 and the Reed case, where the Supreme Court said under that rule, they condemned untimely filings, untimely amendments and supplements to PCRA petitions because it could subvert the jurisdictional question of the one-year time bar for PCRA. Well, you know what? I like 905. I want to start a discussion with you on 905. So 905B, as I read it, says, when a petition for post-conviction collateral relief is defective as originally filed, so you say the first two are defective as originally filed because obviously the direct appeal is still going on, yeah? Yes. The judge shall order amendment of the petition, which is, you call it the third petition, I'll call it the amendment to the second petition, right? We can quibble about that, but you're with me, right? The judge shall order amendment of the petition, indicate the nature of the time within which an amended petition shall be filed. So why doesn't that rule, 905, this is B, yeah, I'm sure you read this in your sleep. Not always, I try to avoid that, Judge. Why doesn't that iteration of the rule provide the authority for the PCRA court to order the supplementation, right? Because we know that the superior court says, no, no, no, no. But 905 seems to say that it's perfectly within the rules. If the first two PCRAs have been appropriately filed. Well, no, no, no. It says, I beg your pardon, but I'm going to give you a chance. But it says, when a petition is defective as originally filed. So that's defective as originally filed, right? You said it, it was defective. If you take that view of the word defective, I would have to agree with you. My heavens, are we going to go there? I have a dictionary to my right here with Judge Maney. You know, he's going to get you on this now. He may, Judge. But the way the appellees are looking, and the comm officers are looking, the court and Pennsylvania law required those first two there was no opportunity to fix that defect, as it were. Because they were completely inappropriately filed. So as soon as the PCRA court denied and dismissed them, as we've said and been mentioned, a legal nullity. And as defense counsel in Pennsylvania has been banging the Commonwealth's head with the phrase legal nullity over the cases of Muniz and some other things regarding Megan's law. If it's a legal nullity, in effect, it never existed. If it's a legal nullity, it's got to be, by definition, defective. Please don't tell me you're going to tell me legal nullity is that they weren't defective, they've got to be defective. It's defective, and it's defect causes a legal nullity. So therefore, it doesn't exist. As I said, there have been cases in- You've got to admit that it's defective. The filing is defective. If I file this on time and whatever, right? And I file it within time, it's whatever it is, a complaint, this or that, right? If I file it out of time, it's not defective. It's defective because it's out of time, right? So inherently, something is wrong with it, right? So the first two have to be defective. But in this case, there's no way to fix that defect. If the PCRA petition is filed while a direct appeal is pending, it has to be dismissed under Pennsylvania law, and there's no way to fix that defect. And the court, as indicated in, I believe the case is Watts, that I cited in my brief, the Superior Court has said, or the Supreme Court, has said that a PCRA court has no authority to just sua PCRA petition that they've already denied and dismissed. So you're arguing that 905, when it grants the authority to file supplement, that has to be read in conjunction with defective, and you can only supplement something that's defective if the thing that was originally filed could have been fixed. But I guess your argument is, is we can't fix something that's out of time. So that's the part of it. You don't need to argue that it's not defective. All you need to argue, I think, is to say, it's a defect that can't be fixed by supplement because that's not what the problem was. Your problem was is that it was premature. Yes, there's nothing to fix at that point. Legally speaking, yes, there's petitions, there's papers in the clerk's office, but it's a legal malady, so therefore, it doesn't exist. All right, so I have two questions for you. Number one, has the Supreme Court of Pennsylvania spoken on this very issue about the breadth of 905B? Not that I'm aware of, Judge. There could be a case out there, but honestly, I don't know if there is. That's okay. No, this isn't a trick. I don't have a case on it. I know, but- And then, has the Supreme Court of Pennsylvania spoken on defective? Again, I can't think of any case off the top of my head, Your Honor. Okay, so then my question is, if we have no guidance from the Supreme Court of Pennsylvania on this point, then if we look at the plain meaning, I understand we have a disagreement on the plain meaning of defective. But if you look at the plain meaning of defective, and the language of this rule, that sets the parameters for interpretation as to whether something can be supplemented or not. You know what, that's not really a question, that was more of a statement. Okay. I'll leave it at that. Okay. But I think it's, I mean, I think it's, and if I may, I mean, I agree with that. I mean, whatever 905B means is ordinarily understood as what it means. And I understand you'd be saying you're not aware that that has been interpreted by any commonwealth authority, so to the extent that that's relevant to our decision, then we need to interpret the rules ordinarily understood. I would agree with that, Judge. But as I said from the beginning, our position is that because the first two petitions were denied and dismissed, there's nothing to fix, because they don't exist, they're a legal nullity. And just to throw something in, I recently had to deal with this under Pennsylvania law because of the changes under Miller and Montgomery. A prisoner's assault by life prisoner conviction from 1992 was overturned because his homicide conviction as a juvenile was overturned by Miller and Montgomery because it was a legal nullity. It didn't exist anymore. The Commonwealth couldn't prove this person was a life prisoner in 1992 when he beat a corrections officer. So if it's a legal nullity, it doesn't exist. Therefore, those first two petitions didn't exist. There was nothing to fix. There was nothing to supplement. So the first substantive PCRA petition that exists in this case is what the Superior Court called the third one that did not raise the recantation issue. The loss in the cases you cite deal mainly with attempts to equitably extend the PCRA petition. Do any of them, do you have any that would deny or say anything about the PCRA court's ability to reinstate once a filing becomes ripe? As I understand the law, I'm citing in my brief the Watts case, says the court, a PCRA court does not have that authority. And the Pennsylvania Supreme Court has consistently... You mentioned in one, you're saying it's a nullity because it was filed too early. But when it becomes ripe, is there any case that says the court cannot reinstate that? I'm aware of no case that says the PCRA court has that authority, Your Honor. Or denies it. Or denies it. The defendant, the petitioner, would need to file a new, timely, properly filed PCRA petition to raise those issues. Here's the thing, I'm so sorry. No, it's okay, Judge Hunt. I beg your pardon. On this very point, to help myself understand Judge Nygaard's question to you. So, as you look at that point of the Supreme Court's authority, right? The Supreme Court is essentially saying the PCRA court is acting outside of its purview. Yes. Okay. Put aside this, whether it's a legal nullity and defective and so forth. What's the authority for the Superior Court to say that the authorization of the supplement is essentially ultra vires? What's the authority for that Superior Court decision? And you agree, just if I can add to that, that saying that if you're in the commonwealth's position is that a third petition is valid. The fourth, the supplement, right? Which goes to the third, taken together, then I think you would agree that raises the issue that's being pressed here. So, the question is whether you can amend the third one with the supplement. Is that, have I stated that correctly? That was part of it. But let's get the answer to his question first, and then I'll go back to mine. I apologize, because I thought that wasn't a question. No, no, obviously, you know, but that's what happens when you sit next to the dictionary, there's so many things going on. No, we're having fun. We are. I'm having fun too, Judge. As I understand your questions, Your Honors, what the Superior Court calls the third petition was timely filed. And that was permitted because the first two were not properly filed, and the PCRA court did not have authority to just reinstate them out of the whole cloth. Then what I believe the Superior Court calls the additional supplement was filed after the one-year time frame and was not filed with leave of the court. So, any issues raised in that petition were untimely and barred by the one-year time bar of the PCRA court, which I think leads back to your question, Judge, what authority? In Pennsylvania, the Supreme Court has consistently, historically, almost mind-numbingly told the Superior Court and lower courts that the PCRA petition one-year time bar is strictly jurisdictional. There is no room in Pennsylvania for any equitable considerations to avoid that one-year time frame. The only considerations are the three exceptions set forth, I believe, in Section 9545B2. I always get them mixed up. So, absent that, and there are cases, there is a case that I cite in my brief, I believe it's the Reed case, where the Supreme Court said we condemn unauthorized supplements or amendments to PCRA petitions and the commonwealth submits. The reason that is, is so that defendants do not try to do an end run around the one-year jurisdictional time frame in PCRA petitions. Right, but that's only applicable to the framework that Judge Beatty just put to you, right? Which is, if you take the third as the original, the third petition as described by the Superior Court, as the original, and then the additional supplement, right? You're saying the additional supplement is out of time. Yes. So, if we disagree with you on the second petition, and disagree with your proposition that the third petition is not a supplement, then that obviously takes that notion of the Supreme Court speaking on extensions of the statute of limitations. That puts that aside, yes? I guess I would have to agree with you, Judge, because if you find that one of those first two petitions could be resurrected, they were timely filed. And I think even the Supreme Court, well, the Superior Court notes that the recantation issue was not mentioned in the petition itself, but was mentioned as an exhibit to one of those petitions. So even the Superior Court in its decision hinted that it wasn't even properly preserved by the first two petitions. But that question was never reached by any court, because the Superior Court found they were unauthorized, and then they moved forward with the third one, and the fourth one that was out of time, and not properly sought permission to file it under Rule 905A. And then, as we've gone through, the District Court found that the Superior Court's reasoning provided adequate state and independent grounds for the procedural default. So, let's entertain for the moment that we have come to an impasse on this, the issue of procedural default, and we've now gone forward, right, on procedural default. So let's talk about due process, yeah? So, tell me, you heard a lot of discussion about Curran, right? And let's assume for a second that we don't need to discuss, you know, miscarriage of justice, et cetera. I understand that that's a separate impediment that you would argue they don't fulfill, right? Right, they don't meet that either. But talk to us about Curran. You know, one of the thoughts about Curran is that it might be cabined with the notion of governmental misconduct because of the facts that arose. Obviously, I read into the record, you know, part of the opinion which doesn't seem to speak to that, but, you know, you read the opinion. Tell us how we should look at Curran. The Commonwealth's view is that Curran should be read with a lens of some type of government misconduct. Why? In that case, it was clearly, as I recall, it was clearly a police officer that said there were statements when there weren't. And there's obviously government misconduct there and anything done by the police officer is attributable to the prosecution. And it also would... Is there any dicta that you would point to to say that the court was thinking about narrowing it in that way? Because the language that I read into the record seems to be quite expansive. That this is how we think of falsity. That's true, Judge. And off the top of my head, I cannot recall right now any dicta that I can rely on that. Just the fact of the matter that it was a detective who actually did the falsehood. It was pretty clear. Were there statements? He said there were. There actually weren't. In this case, I would compare it and contrast it as this is a victim coming forward as a minor who said that I lied. With no hint at all of any government prosecutorial misconduct. The record... Well, the Commonwealth believes that the record isn't as clear cut as Judge Ajela thought it was. And that's why we appealed in the first place. Well, let me give you a hypothetical, right? You know, sexual assault is very difficult. I'm not making light of it in any way. But let's say you have someone who asserts sexual assault. It leads to a conviction. And it's adult, so we'll make it easier. It's an adult victim. That victim comes to court X amount of time later and says total fabrication, you know, wanted to whatever reason, revenge, whatever. In that circumstance, would you say that Curran would not permit that petitioner to seek relief? But I think a petitioner can seek relief, as I tell my students, when I teach, you know, anybody can file a piece of paper in the right courtroom. And I know what you're saying, Judge. You can seek relief, but just because you seek relief doesn't mean you're entitled, entitled to. But you know what I'm talking about. Yes, I know what you're talking about. I'm talking about do you need to have the governmental misconduct? Because it would seem in that case, you could possibly be waiting for that. Right. In that case. But still, someone still might get into the fact that the government should have known. And there's not always times that the government should know or does know. And I think these cases are very, very facts. Doesn't that cut against you, though? Right. Pardon, Judge? Doesn't that cut against you, right? It does cut against me. But I think these recantation cases many times are very, very fact specific. And although you made the hypothetical with an adult, the Commonwealth submits even that type of recantation would need to be looked at in context of any other evidence that was presented to the trial. And while certainly a victim testimony, especially of a sexual assault, be they adult or child, is very impactful and very powerful, the Commonwealth submits, you just can't look at that kind of thing in a vacuum and say, oh, they changed their mind or they recanted. What other evidence was there? Just because a victim recant, well, was there DNA evidence? Was the defense consent or not consent? So I think you still have to look into the context of the recantation to some degree. Well, of course, you're right. But we can't look at that, right? I mean, that's not what we're looking at as a review in court. And the PCRA court went through that analysis. I understand you disagree. It did. We disagree. That's why we appealed in the first place. And that's how, in part, we got here this afternoon. It's certainly difficult other than to say recantation evidence is always unfavored. It's looked at suspiciously, but the Commonwealth has to concede, to be honest with the court, that there's always the realm of possibility that recantation evidence is more truthful than the original trial testimony, and defendants, petitioners, should get relief. Should that be this case? The Commonwealth submits no. And another point the Commonwealth would make on that is, as I recall, the Judge Agello's, the trial court's opinion, he did not give the defendant a straight discharge. He just granted him a new trial. So, I mean, if the Commonwealth should lose this argument here and this court decides to remand back to the district court, to remand back, the defendant gets a new trial if the Commonwealth so chooses to retry him. And the jury would then be presented with, in all likelihood, DM's initial trial testimony, her PCRA testimony that said she lied, any other evidence that would impact upon her credibility. There'd be all the other evidence that, of the tender years exception, that hearsay evidence that was admitted in the first trial. And then the jury would decide. And then the jury could still convict Mr. Marcy of those offenses. Yeah, this is no guarantee of result. Right. Absolutely. All right, thank you so much. Thank you, Judge, for letting me go over time as well. Thank you. Yeah, thank you. Your Honors, I'd like to briefly clarify an issue on the procedural default question, if I may. And then I have a couple of points about the miscarriage of justice. You're okay about doing procedural default? I know it's not your area. No, I'm happy to discuss it. And I think Judge Mabee got it just right during the questioning, that regardless of whether the reinstated petition was a legal nullity, there was the supplement filed after that, which was timely. So even the Superior Court agreed that could be regarded as the first petition. And once that's there, sorry. So the additional, your adversary asserted that the additional supplement, as that nomenclature is used by the Superior Court, was out of time. And help us on the fact. Is it out of time or not? It's not out of time because it's an amendment. So amendments are not governed by the PCRA time bar. That's CRISPO. Amendments can be filed at any time to a pending validly filed petition. And it's clear all parties agree, the Superior Court agreed, that even if the reinstated petition was not valid, that the first supplement was then a valid PCRA petition that was then amended. And so then the question is, well, was that amendment authorized? And that question is answered by Commonwealth versus Dennis. That's the state Supreme Court decision that your honors were looking for earlier under the Independent and Adequate State Ground Doctrine. What about Reed? Reed is not apposite. And the reason is because the PCRA court in Reed did not actually address the additional claims. It dismissed the PCRA petition. And then after it went up on appeal and actually came back down for notice of appeal and issues on appeal, then it talked about them. But it dismissed before considering them. So it never actually accepted those claims. And that's what Commonwealth versus Brown recognizes. That's a helpful case where it sort of makes clear why Reed and Dennis are actually consistent. And it's because in Reed, the PCRA court did not accept and consider the claims. Basically, Rule 905 gives the PCRA court discretion. It can grant leave to amend. It can authorize amendment. It can accept amendments, or it can deny them. And here, the PCRA court exercised its discretion, and it clearly accepted the filings. And so under Dennis, that is a valid amendment, and the claim was raised. I think even if there were a procedural default here, Marcy would be able to overcome it. And from sort of this point on in the case, I think that's where the state court fact-finding really sort of paves the way forward, based on the credibility determination and based on the recantation. Marcy can actually meet that extremely demanding standard, because the recantation is two things. It's first, extraordinarily powerful affirmative evidence of innocence from the victim herself and the sole eyewitness found credible. And then it also eliminates the only evidence that incriminated him. So I think in this case, the PCRA court's factual finding would allow him to overcome that. But again, we certainly argue that there's no valid procedural default here. And so there's no obstacle to this court reaching the merits. Once it reaches the merits, I think again, the PCRA court's fact-finding is crucial under Curran. Curran is not limited to cases of government misconduct. I think Sanders from the Second Circuit, which adopts Curran, makes that clear and gives a reading of why there's still state action, why state knowledge is not required, and adopts Curran. I agree with opposing counsel that this is a fact-specific claim. I think that's where a lot of the cabining of Curran will come from, is from the sort of specific facts of cases. And here we have, we don't have to ask because we have a factual finding by the PCRA court that makes clear Diem's testimony was false. And we know exactly how central it was to the original trial. Thank you, counsel. Thank you. Now, before we adjourn, I do want to extend our thanks to Mr. Roth. We, we, we, we thank you, sir, because obviously you, you are you are talented at teaching, because these young lawyers did a- I think it was more the, what I was working with rather than the teaching part. Right. Yeah, yeah, yeah. Well, however it is, it was, it was quite good, and you're to be commended, and we thank you. And obviously, we thank the, now, now you all are out, out of school now? You, you took the bar and so forth? About to take it? Oh, that's right. It's not the end of July yet. Right. I lose track of time. Anyway, both sides, really, very engaging argument. Thanks very much. We'll take the matter under advisement. Thank you. Thank you. Sorry in advance for any inconveniences or  It's just too high up, isn't it. I get it.     Lewis. Okay, you have to close the window, or Okay. I can't see him on the desk. Oh, Michael, Michael, Michael. Okay. Thank you very much. It's. Okay. Equals. No. Star. Work. There.